UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Isaac J. Walker, | ) | Civil Action No.:  4:14-cv-03749-RBH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Warden Leroy Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Isaac J. Walker, a state prisoner proceeding pro se, initiated this action by filing a

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  *See* ECF No. 1.  The matter is before

the Court for consideration of Petitioner's objections to the Report and Recommendation (R & R) of

United States Magistrate Judge Thomas E. Rogers, III.[1]  *See* ECF Nos. 52 & 54.  For the reasons stated

below, the Court adopts the Magistrate Judge's R & R, grants Respondent's motion for summary

judgment, and dismisses Petitioner's § 2254 petition with prejudice.

**Facts and Procedural History**

The State of South Carolina indicted Petitioner for first-degree burglary on December 28, 2006,

and tried him under an accomplice liability theory in January 2008.  ECF No. 46-1 at 38-39, 115, 204-

05.  The State's witnesses testified to the following facts at trial.  On the afternoon of September 5,

2006, Petitioner and Lisa Godfrey parked their car near a house located in Spartanburg, South Carolina.

*Id.* at 52.  They exited the vehicle and Godfrey asked the elderly victim, who was sitting outside the

house on the porch, if she could use the restroom.  *Id.*  The victim permitted Godfrey to do so, and while

she was inside the residence, Petitioner remained outside with the victim and assured him that Godfrey

---

[1]    This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule
73.02(B)(2)(c) for the District of South Carolina.

would return shortly. *Id.* After becoming suspicious, the victim entered his house, found Godfrey looking around a back room, and told her to leave. *Id.* at 52. Godfrey returned to the porch, but then said she wanted a drink of water and walked back inside the house. *Id.* at 52-53. Petitioner reassured the victim that Godfrey would return, but after several minutes elapsed, the suspicious victim reentered his home and saw Godfrey walking through the back door. *Id.* at 53. After the victim confronted Godfrey, she and Petitioner sped away in their car. *Id.* at 53-54, 139-40. The victim realized a rifle and shotgun were missing from a gun rack in his house, so he reported the incident to law enforcement. *Id.* at 56-57, 62, 123-24, 131. Later that evening, police stopped Petitioner and Godfrey's vehicle and found the victim's guns inside the vehicle. *Id.* at 154-62, 179-82.

Petitioner did not testify or present any evidence in his defense. The jury found Petitioner guilty as charged,[2] and the trial court sentenced him to twenty-two years imprisonment.[3] ECF No. 46-2 at 17, 47. After the South Carolina Court of Appeals dismissed his direct appeal, Petitioner filed an application for post-conviction relief (PCR) alleging, among other grounds, that trial counsel was constitutionally ineffective for failing to advise him of a pretrial plea offer from the State that would have enabled him to plead guilty to grand larceny for the theft of goods valued more than one thousand dollars but less than five thousand dollars. *Id.* at 62, 66-74, 81-87. The state PCR court held an evidentiary hearing in 2011. *Id.* at 88-158.

At the evidentiary hearing, the PCR court received into evidence several documents from trial counsel's case file. ECF No. 46-1 at 33-34, 36, 40-42. The following three documents pertain to a

---

[2]    Godfrey (who did not testify at Petitioner's trial) pled guilty to second-degree burglary (violent) in February 2008. ECF No. 46-2 at 135, 143-44.

[3]    The trial court originally sentenced Petitioner to twenty-five years' imprisonment but granted his motion for reconsideration of the sentence. ECF No. 46-2 at 29, 46-47.

pretrial plea offer that the State conveyed to trial counsel in October 2006 shortly after Petitioner's

arrest:

- In a letter dated October 11, 2006, the assistant solicitor currently prosecuting Petitioner's criminal case made the following offer: "Isaac Walker – My offer is to allow him to plea straight up as charged. If he does not wish to plea straight up to grand larceny $1-5K, I will be direct indicting this case as a burglary 1st. . . . Th[is] offer[] will remain open until Wednesday, October 25th."

- In an email dated October 11, 2006, trial counsel responded to the assistant solicitor's letter, stating, "Thanks for the paperwork and offers – I will relay offers and review files with clients and let you know something as soon as I can – certainly before 10/25!!"

- In an email dated November 1, 2006, the assistant solicitor again relayed the plea offer for Petitioner to plead guilty to grand larceny: "I extended an offer in this case a couple of weeks ago. Mr. Walker was charged with Grand Larceny; however, since trickery was used to gain access to the victim's home, and since firearms were stolen from the victim, I can indict this case as a Burglary 1st. My offer was to allow Mr. Walker to plea straight up to Grand Larceny as charged. This offer was set to expire on October 25th. Because you were trying to get ready for a trial, I was willing to extend the offer. The purpose of this letter is to set a deadline of Wednesday, November 15th for Mr. Walker to accept this offer."[4]

*Id.* at 33-34, 36.

The PCR court also considered as evidence email correspondence that trial counsel had with an

assistant solicitor the month before Petitioner's trial. *Id.* at 40-42. The following documents show the

State conveyed a second pretrial plea offer to trial counsel in December 2007:

- In an email dated December 18, 2007, an assistant solicitor[5] informed trial counsel that he was faxing her a formal plea offer and asked her to convey it to Petitioner. The faxed plea offer form contained an offer for Petitioner to plead guilty to one charge of second-degree burglary (nonviolent) and one charge of second-degree

---

[4]    Trial counsel's case file did not contain a response to the assistant solicitor's November 1, 2006 email.

[5]    The assistant solicitor who made the December 2007 plea offer was not the same solicitor who made the October 2006 plea offer. *Compare* ECF No. 46-1 at 33-34, 36 (assistant solicitor William Rhodes), *with id.* at 40-42 (assistant solicitor Bob Coler).

burglary (violent),[6] and the form provided the offer would expire the next day, December 19.

- In an email dated December 19, 2007, trial counsel responded to the offer, stating, "Mr. Walker respectfully declines the State's offer and requests a jury trial."

*Id.* The above correspondence—detailing (1) the October 2006 plea offer for grand larceny and (2) the December 2007 plea offer for two second-degree burglaries—was the central focus of Petitioner's and trial counsel's testimonies at the PCR hearing. ECF No. 46-2 at 94-144, 161-81.

Petitioner testified he was arrested on September 6, 2006 (the day after the incident at the victim's home) on a grand larceny charge and bonded out of jail on October 15, 2006. *Id.* at 94, 96. He claimed he never met or communicated with trial counsel—his appointed attorney—until he received a phone call from her on December 18, 2007. *Id.* at 95. During that phone call, trial counsel introduced herself and informed Petitioner that he had been indicted for first-degree burglary; Petitioner asserted this conversation was the first time he learned of the first-degree burglary indictment. *Id.* at 95-99. While on the phone, Petitioner argued with trial counsel and maintained the correct charge should have been grand larceny, but trial counsel explained that he had been directly indicted for first-degree burglary and that the State had made a plea offer (the one from December 2007) allowing him to plead guilty to two second-degree burglaries. *Id.* at 112. Petitioner acknowledged in his PCR testimony that he knew of and rejected the December 2007 offer. *Id.* at 100-01, 112.

Regarding the October 2006 plea offer for grand larceny, Petitioner testified that trial counsel never communicated the offer to him and that he never learned of it until after he had been tried and convicted. *Id.* at 102, 124. Petitioner claimed he would have immediately accepted the October 2006

---

[6] The nonviolent second-degree burglary offer was for a prior offense committed in 2004; the violent second-degree burglary offer was for the September 5, 2006 incident involving the stolen guns. ECF No. 46-2 at 126-27; ECF No. 46-4 at 7.

offer had trial counsel relayed it to him, stating, "I would have run to the courthouse and accepted the plea from the solicitor if I'd been notified." *Id.* at 102, 110, 125.  When asked to explain why he would have pled guilty to grand larceny, Petitioner answered, "The reason I would have pled to grand larceny is because I took [Godfrey] out there.  Got out there, she didn't want to give me my gas money, and I didn't have no gas money." *Id.* at 104-05.

Petitioner further addressed the facts and circumstances of the crime.  *See id.* at 104-07, 114, 123-24.  He maintained he did not know Godfrey stole the guns until after he had finished speaking with the victim and returned to his car; Petitioner claimed he "freaked out" when he saw the victim had the guns, so he drove off.  *Id.* at 107, 114, 123.  He maintained, "If I'm guilty of anything I'm guilty of panicking and leaving when she brought them out there to the car." *Id.*  Petitioner further testified he "did not aid and abet" Godfrey, and he stated, "I never committed a larceny." *Id.* at 114.

During cross-examination, Petitioner testified he rejected the December 2007 plea offer because he believed he thought he would serve a fifteen-year prison sentence.  *Id.* at 350.  However, Petitioner could not provide a definitive answer as to why he would have accepted a plea to grand larceny—which, according to the State's attorney, would have carried a sentence of "zero to ten" years[7]—but not a plea to violent second-degree burglary, which would have carried a sentence of zero to fifteen years.[8] *See*

---

[7]    The assistant attorney general who represented the State at the PCR hearing misstated the maximum penalty that Petitioner's grand larceny charge carried.  At the time Petitioner was arrested and charged, a conviction for grand larceny of property valued more than one thousand dollars but less than five thousand dollars carried a maximum sentence of **five** years, not ten years.  *See* S.C. Code Ann. § 16-13-30(B) (2003) ("Larceny of goods, chattels, instruments, or other personalty valued in excess of one thousand dollars is grand larceny.  Upon conviction, the person is guilty of a felony and must be fined in the discretion of the court or imprisoned not more than: (1) five years if the value of the personalty is more than one thousand dollars but less than five thousand dollars; (2) ten years if the value of the personalty is five thousand dollars or more.").

[8]    At the time of Petitioner's offense, a conviction for first-degree burglary carried a minimum sentence of fifteen years, whereas a conviction for second-degree burglary carried a maximum sentence of fifteen years.  *Compare* S.C. Code Ann. § 16-11-311(B) (2003) (first-degree burglary), *with* S.C. Code Ann. § 16-11-312(C) (2003) (second-degree burglary).

*id.* at 126-28. He simply stated he would not have pled guilty to burglary when he had not been arrested for burglary, and claimed trial counsel did not explain to him that a conviction for violent second-degree burglary had a sentencing range of zero to fifteen years. *Id.* at 127-28. Petitioner reiterated his previous testimony that he would have accepted the plea offer for grand larceny, stating, "I would have not . . . accepted a plea to burglary second or first degree. I would have accepted my original plea offer to grand larceny." *Id.* at 141.

Trial counsel testified Petitioner was arrested for grand larceny in September 2006 and that she was appointed to represent him that same month. *Id.* at 162-63. She recalled the assistant solicitor making a plea offer that would have allowed Petitioner to plead guilty to grand larceny, though she could not remember the exact date of that offer. *Id.* at 164. During her testimony, trial counsel was given copies of the October 11 and November 1, 2006 correspondence that she had with the assistant solicitor, and she read it into the record. *Id.* at 165-66. Trial counsel could not specifically recall whether she communicated the plea offer for grand larceny to Petitioner, and she acknowledged she had no notes confirming whether she spoke with him about that offer, admitting she "was very bad" in documenting her discussions with clients. *Id.* at 167, 174. Trial counsel acknowledged her case file did not contain an acceptance or rejection to the offer that was conveyed in October 2006 and reconveyed in November 2006, but she testified her routine practice was to relay any plea offers to her clients. *Id.* at 167, 174. She did recall speaking to Petitioner on December 18, 2007, about the plea offer for the second-degree burglaries, explaining to him the potential sentencing ranges for first-degree burglary and second-degree burglary, and learning Petitioner wished to refuse the offer. *Id.* at 169-70, 174.

Regarding her interactions with Petitioner, trial counsel testified the majority of her

6

conversations with him occurred via telephone, and she confirmed they spoke on the phone several times before December 18, 2007.  *Id.* at 169-70, 174.  Their conversations were "argumentative," and Petitioner "adamantly and consistently indicated" to trial counsel "that he was not guilty and that he wanted a trial."  *Id.* at 168, 177.  Trial counsel recollected Petitioner's "adamant denial of any guilt or wrongdoing" and explained Petitioner proceeded to trial with the goal of acquittal based upon his belief that he had not committed a burglary or any other crime.  *Id.* at 170, 178.  Trial counsel testified she did not believe Petitioner would have accepted a plea offer.  *Id.* at 176.

On March 19, 2012, the PCR court issued an order denying Petitioner's PCR application.  *Id.* at 188-95.  Petitioner filed a motion for reconsideration in April 2012 asking the PCR court to reconsider his case in light of the United States Supreme Court's then-recent decisions in *Missouri v. Frye*, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012).[9]  ECF No. 46-2 at 197-98, 204-07.  The PCR court held a hearing and issued an amended order again denying Petitioner's PCR application.  *Id.* at 209-24.  In its amended order—the contents of which are set forth verbatim in the Magistrate Judge's R & R—the PCR court found (1) trial counsel was deficient for failing to convey the State's plea offer for grand larceny to Petitioner but (2) Petitioner did not show prejudice from trial counsel's deficiency.  *Id.* at 225-32.  Regarding trial counsel's deficient performance, the PCR court ruled as follows:

> This Court finds that although Counsel is also credible that her customary practice is to convey all offers and this is the basis for her opinion that she made the offer to [Petitioner], the lack of other supportive documentation or evidence supports the reasonable inference that the October 2006 offer was not conveyed to [Petitioner].

---

[9]     The Supreme Court issued *Frye* and *Lafler* on March 21, 2012, two days after the PCR court entered its order of dismissal.

*Id.* at 229. In finding no prejudice, the PCR court found Petitioner was not credible when he testified

he would have accepted the October 2006 plea had it been offered to him, ruling:

> [A]lthough this Court finds that [Petitioner] has met his burden of
> proof as to Counsel's deficiency in failing to convey the October
> 2006 plea offer, this Court finds that [Petitioner] failed to establish
> the second prong of prejudice. Although [Petitioner] testified
> passionately that he would have accepted the October 2006 plea had
> he known about it, this Court does not find it credible and is not
> convinced that [Petitioner] would have accepted the offer based upon
> his equally passionate testimony regarding his limited involvement
> with the facts associated with the crime. Given [Petitioner]'s
> demeanor, the fact that he rejected the pleas to burglary – 2nd degree,
> and his very strong position concerning his role in the crime, this
> Court finds that it is more likely than not that [Petitioner] would not
> have accepted the plea to the grand larceny charge if [it] were offered
> to him at any point.

*Id.* at 229-30. Besides the above credibility finding, the PCR court also made a general credibility

determination: "This Court finds that in regard to the allegations of ineffective assistance of counsel,

Counsel's testimony was more credible than [Petitioner]'s testimony." *Id.* at 231.

Petitioner appealed the PCR court's order, but the South Carolina Supreme Court denied

certiorari and remitted the case. ECF Nos. 46-3, 46-4, 46-5, 46-6, 46-7, & 46-8. Petitioner then filed

his habeas petition pursuant to 28 U.S.C. § 2254. ECF No. 1. In his petition, Petitioner raised a single

ground for relief: that trial counsel was constitutionally ineffective for failing to inform him of the

State's October 2006 plea offer for grand larceny. *Id.* at 5. Respondent agreed Petitioner exhausted his

state remedies for this ground as required by 28 U.S.C. § 2254(b)(1)(A), and that the ground was ripe

for adjudication in federal court. ECF No. 46 at 6-7. Respondent filed a motion for summary judgment,

as well as a return and supporting memorandum. *See* ECF Nos. 45 & 46. Petitioner filed a response

in opposition to Respondent's motion for summary judgment. *See* ECF No. 50. The Magistrate Judge

8

issued an R & R recommending that the Court grant Respondent's motion for summary judgment and dismiss Petitioner's petition without an evidentiary hearing. *See* R & R, ECF No. 52. Petitioner filed timely objections to the R & R. *See* Pet.'s Objs., ECF No. 54.

## Legal Standards

### I. Review of the Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199-200 (4th Cir. 1983).

### II. Federal Habeas Review Under 28 U.S.C. § 2254

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 governs review of his claims. *Lindh v. Murphy*,

9

521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

    (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Section 2254(d)(1) describes the standard of review to be applied to claims challenging how the state courts applied federal law, while § 2254(d)(2) describes the standard to be applied to claims challenging how the state courts determined the facts." *Winston v. Kelly*, 592 F.3d 535, 553 (4th Cir. 2010).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "[e]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Moreover, state court factual determinations are presumed to be correct, and Petitioner has the burden to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Under the AEDPA, a federal court must afford a state court's decision "deference and latitude that are not in operation when the case" is being considered on direct review. *Harrington*, 562 U.S. at

10

101. Federal review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. *See id.* at 98 (observing "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show there was no reasonable basis for the state court to deny relief. *Id.* Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. *Id.* at 102.

In other words, to obtain habeas corpus from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Section 2254(d) codifies the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (internal quotation marks omitted).

## Discussion

The Magistrate Judge recommends that the Court grant Respondent's motion for summary judgment and dismiss Petitioner's habeas petition without an evidentiary hearing. R & R at 14-15. In the R & R, the Magistrate Judge evaluated Petitioner's claim that he is entitled to habeas relief because trial counsel was ineffective for failing to notify him of the State's plea offer for grand larceny. *Id.* at 8-14. After reviewing the record and concentrating on the PCR court's credibility findings, the Magistrate Judge concluded Petitioner could not demonstrate that the state PCR court's decision

11

rejecting the ineffective assistance of counsel claim was contrary to or unreasonable under clearly established federal law, or that the PCR court made objectively unreasonable factual findings. *Id.* at 13. Petitioner objects to the Magistrate Judge's conclusions. Pet.'s Objs. at 1-20.

## I.     Ineffective Assistance of Counsel—Failure to Convey the October 2006 Plea Offer

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of competent counsel during the plea-bargaining process. *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). As the Supreme Court explained in *Hill v. Lockhart*, 474 U.S. 52, 57 (1985), the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance claims involving the plea process. To prevail on an ineffective assistance claim, a habeas petitioner must show (1) counsel's performance was deficient and (2) there is a reasonable probability that the deficiency prejudiced the petitioner's defense. *Strickland*, 466 U.S. at 687. To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, a petitioner must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the plea context, the *Strickland* prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59.

To show prejudice from trial counsel's failure to convey a plea offer, habeas petitioners must demonstrate a reasonable probability that (1) "they would have accepted the earlier plea offer had they been afforded effective assistance of counsel"; and (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that

discretion under state law."[10] *Frye*, 132 S. Ct. at 1409; *accord Lafler*, 132 S. Ct. at 1385. "To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 132 S. Ct. at 1409. "[I]t is entirely clear that to demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so must be credible." *Merzbacher v. Shearin*, 706 F.3d 356, 366-67 (4th Cir. 2013).

### A.     Credibility Determinations by a State Court

In Petitioner's case, the PCR court made a finding relevant to the first element of the *Frye* prejudice test—that Petitioner failed to demonstrate a reasonable probability that he would have accepted the October 2006 plea offer for grand larceny. ECF No. 46-2 at 229-30. The PCR court's no-prejudice finding rested almost entirely on its adverse credibility assessment of Petitioner's testimony that he would have accepted the grand larceny plea. *See id.* ("Although [Petitioner] testified passionately that he would have accepted the October 2006 plea had he known about it, this Court does not find it credible and is not convinced that [Petitioner] would have accepted the offer based upon his

---

[10]     In *Frye*, the Supreme Court explained this prejudice test is rooted in *Strickland* and *Hill*:

> This application of *Strickland* to the instances of an uncommunicated, lapsed plea does nothing to alter the standard laid out in *Hill*.  In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.  *Hill* was correctly decided and applies in the context in which it arose.  *Hill* does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations. . . .  **Strickland's inquiry into whether "the result of the proceeding would have been different," 466 U.S. at 694, requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed.**"

*Frye*, 132 S. Ct. at 1409-10 (emphasis added).

13

equally passionate testimony regarding his limited involvement with the facts associated with the crime.").

"Credibility determinations are factual determinations" and implicate 28 U.S.C. §§ 2254(d)(2) and 2254(e)(1). *Merzbacher*, 706 F.3d at 363-64, 367. As previously explained, § 2254(d)(2) prohibits a federal habeas court from issuing the writ unless the state court's adjudication of the habeas claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Section 2254(e)(1) requires the federal court to presume the state court's determination of a factual issue is correct unless the petitioner meets "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The two provisions, operating in tandem, require that '[t]o secure habeas relief, petitioner must demonstrate that a state court's finding . . . was incorrect by clear and convincing evidence, and that the corresponding factual determination was 'objectively unreasonable' in light of the record before the court.'" *Merzbacher*, 706 F.3d at 364 (alteration in original) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003)).

A federal habeas court cannot overturn a state court's credibility determination unless that determination is "'objectively unreasonable in light of the evidence presented in the state court proceeding.'" *Id.* (quoting *Miller-El*, 537 U.S. at 340). "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Plainly stated, a federal court cannot overturn a state court's credibility finding absent "stark and clear" error. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008).

"'A federal court can disagree with a state court's credibility determination,' *Miller-El*, 537 U.S.

14

at 340, but disagreement alone is not enough." *Merzbacher*, 706 F.3d at 368. "The federal court must conclude not only that the state court's determination was wrong, but that it was *unreasonable* in light of the evidence presented, that is, it is not 'debatable among jurists of reason.'" *Id.* (quoting *Miller-El*, 537 U.S. at 336). The Fourth Circuit has "repeatedly emphasized" the great deference that a federal court must afford a state court's credibility finding. *Id.* at 364; *see also Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003) ("Credibility determinations, such as those the state PCR court made . . . , are factual determinations. As such, they 'are presumed to be correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.'" (quoting *Miller-El*, 537 U.S. at 340)).

## B. Application of § 2254(d)(2) and § 2254(e)(1) to Petitioner's Case

In *Merzbacher*, *supra*, the Fourth Circuit addressed an ineffective assistance claim—failure to convey a plea offer—similar to that Petitioner raises in the instant case.[11] *See* 706 F.3d at 358. The Fourth Circuit provided a guide for applying the first element of the prejudice test outlined in *Frye*

---

[11]       In *Merzbacher*, trial counsel, prosecutors, and the trial court informally discussed in chambers—without the defendant's presence—the possibility that the defendant would plead guilty in exchange for a recommended sentence of ten years' imprisonment and dismissal of other charges. 706 F.3d at 359. The trial court agreed to uphold the arrangement if the defendant consented. *Id.* However, trial counsel never informed the defendant of the plea offer, so the defendant proceeded to trial, was convicted on all charges, and was sentenced to an aggregate term of life imprisonment. *Id.* The defendant filed a state PCR application claiming trial counsel was ineffective for failing to informing him of the plea offer, but the state PCR court denied it. *Id.* at 359-62. The defendant then filed a § 2254 habeas petition, which the district court granted. *Id.* at 362-63.

The Fourth Circuit reversed the district court. *Id.* at 370. Applying the *Frye* prejudice test, the PCR court ruled the state PCR court did not act unreasonably in finding (1) the defendant was not credible when he testified that he would have accepted the plea had it been offered to him, and therefore the defendant failed to demonstrate a reasonable probability that he would have accepted the plea offer; and (2) the defendant failed to demonstrate a reasonable probability that he would have entered the plea without the prosecution canceling it or the trial court refusing to accept it. *Id.* at 368-70 ("Accordingly, Merzbacher has failed to demonstrate that the state court's determination there was no reasonable probability that the plea would have been entered and accepted 'was based on an unreasonable determination of the facts in light of the evidence presented,' 28 U.S.C. § 2254(d)(2). Nor has he rebutted this determination 'by clear and convincing evidence.' *Id.* at 2254(e)(1).").

(namely, whether the petitioner can demonstrate a reasonable probability that he would have accepted the uncommunicated plea offer) and for evaluating a state court's no-prejudice finding that relies upon an adverse credibility assessment of the petitioner. *See id.* at 366-69. First, a federal habeas court must determine whether the petitioner can "demonstrate, as required by § 2254(d)(2), that the state court's adjudication that his testimony was not credible that he would have accepted the plea 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* at 367. Second, if the federal court finds the petitioner fails to meet his burden under § 2254(d)(2), the court must determine whether the petitioner can "rebut the state court's findings by clear and convincing evidence as required by § 2254(e)(1)." *Id.* at 368. The Court adheres to the guide from *Merzbacher* in the following analysis.

1.    **§ 2254(d)(2)**

Petitioner argues the record does not support the PCR court's finding that he would not have accepted the October 2006 plea offer for grand larceny. Pet.'s Objs. at 4-5. He asserts the PCR court erred in finding his testimony not credible and, summarizing his testimony given at the state evidentiary hearing, contends the PCR court's adverse credibility determination "is stark and clear." Pet.'s Objs. at 4-18. The Court disagrees.

Regarding whether Petitioner demonstrated a reasonable probability that he would have accepted the grand larceny plea, the PCR court found Petitioner did not because he gave "passionate testimony regarding his limited involvement with the facts associated with the crime," maintained a "very strong position concerning his role in the crime," and rejected the December 2007 plea offer for the second-degree burglaries. ECF No. 46-2 at 230. The PCR court explained it considered Petitioner's "demeanor" in assessing his truthfulness, and it concluded Petitioner's testimony that he would have

16

accepted the grand larceny plea was not credible. *Id.*

The Court finds the PCR court did not act unreasonably in finding Petitioner not credible when he testified that he would have taken the grand larceny plea had trial counsel communicated it to him. "This is especially so given that only the state court had the opportunity to observe the testimony on this critical point." *Merzbacher*, 706 F.3d at 368. Petitioner's self-serving testimony that he would have accepted the plea is precisely the type of testimony "subject to heavy skepticism." *Id.* at 367. In light of *all* the evidence considered by the PCR court—particularly Petitioner' testimony expressing his fervent belief that he had little or no role in the crime—the Court cannot conclude Petitioner met his burden to prove the PCR court's credibility evaluation of his testimony was "stark and clear." *Cagle*, 520 F.3d at 324. Accordingly, the Court finds Petitioner has failed to show that the PCR court's ruling that his testimony was not credible that he would have accepted the grand larceny plea "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### 2.      § 2254(e)(1)

Petitioner seeks to rebut the PCR court's credibility finding by relying on the documents from trial counsel's case file containing the communications between her and the assistant solicitor that occurred on October 11 and November 1, 2006. Pet.'s Objs. at 7-11. Although these documents confirm the existence of the grand larceny plea offer, they do nothing to help Petitioner establish that he would have accepted the plea. Such objective evidence of the uncommunicated plea offer relates to trial counsel's deficiency for failure to communicate the plea (which the PCR court indeed found), not to whether Petitioner would have accepted the plea. Consequently, the Court finds Petitioner has failed to rebut the PCR court's credibility finding by clear and convincing evidence as required by

§ 2254(e)(1).

###    C.    Summary

In conclusion, Petitioner failed to satisfy the first element of the *Frye* prejudice test and thus is not entitled to habeas relief.[12]  He cannot demonstrate a reasonable probability that he would have accepted the October 2006 plea offer for grand larceny because the state PCR court deemed his testimony not credible.  *See Merzbacher*, 706 F.3d at 366-67 ("[T]o demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so *must be credible*." (emphasis added)).  The Court must defer to the PCR court's finding as required by §§ 2254(d)(2) and 2254(e)(1).  *See id.* at 367 ("[O]nly if Merzbacher's testimony that he would have accepted the plea was deemed credible could *Frye* and *Lafler* assist him.  The state court found this testimony not credible.  Our close examination of the record and application of §§ 2254(d)(2) and 2254(e)(1) require us to defer to that finding.").  Consequently, the Court must uphold the PCR court's no-prejudice finding because Petitioner has neither shown the PCR court made an unreasonable determination of the facts nor rebutted the PCR court's credibility determination—a factual issue—with clear and convincing evidence.[13]

## II.    Evidentiary Hearing

Petitioner also objects to the Magistrate Judge's recommendation that the Court dismiss his

---

[12]    The PCR court did not address the second element of the *Frye* prejudice test: whether Petitioner demonstrated a reasonable probability that he could have entered the plea without the assistant solicitor canceling it or the trial court refusing to accept it.  *See Frye*, 132 S. Ct. at 1409.  However, no such inquiry was necessary because the PCR court found Petitioner failed to meet the first element of the *Frye* prejudice test by not establishing a reasonable probability that he would have accepted the grand larceny plea.  *See* ECF No. 46-2 at 229-30.

[13]    The Court also agrees with and adopts the Magistrate Judge's conclusion that habeas relief is not available under § 2254(d)(1) because the PCR court did not unreasonably apply the *Strickland* standard (or *Hill*, *Frye*, and *Lafler*) in denying Petitioner's ineffective assistance of counsel claim.  *See* R & R at 13.

18

petition without an evidentiary hearing; he asserts his petition warrants a "full and fair evidentiary hearing." Pet.'s Objs. at 18-20. The decision to grant an evidentiary hearing is "generally left to the sound discretion of district courts." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). The Court must consider whether an evidentiary hearing would afford Petitioner the opportunity "to prove the petition's factual allegations, which, if true, would entitle [him] to federal habeas relief." *Schriro*, 550 U.S. at 474. "[T]he deferential standards prescribed by § 2254 control whether to grant habeas relief, [and] a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id.*; *see* 28 U.S.C. § 2254(e)(2) (stating a district court "shall not hold an evidentiary hearing" unless the habeas petitioner shows (1) his claim rests upon a new rule of constitutional law or on a factual basis that could not have been previously discovered through due diligence; and (2) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the [petitioner] guilty of the underlying offense"). Having thoroughly reviewed the petition and the state court record, the Court finds an evidentiary hearing is not warranted and denies Petitioner's request for one.

## Certificate of Appealability

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies relief on the merits, a prisoner satisfies this standard by demonstrating reasonable jurists would find the court's assessment of the constitutional claims is debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). "[A] substantial showing of the denial of a

constitutional right . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack*, 529 U.S. at 484 (internal quotation marks omitted).

The Court has concluded that Petitioner has failed to demonstrate the state PCR court's determination that there was no reasonable probability that he would have accepted the October 2006 plea offer "was based on an unreasonable determination of the facts in light of the evidence presented," 28 U.S.C. § 2254(d)(2), and he has failed to rebut this determination "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). However, the Court is reluctant to conclude that reasonable jurists would not find its assessment of the claim debatable or wrong. The Court concludes the issue deserves further review sufficient to warrant a certificate of appealability under 28 U.S.C. § 2253(c)(2). Accordingly, the Court certifies the following issue for appeal: was trial counsel ineffective for failing to notify Petitioner of the State's October 2006 pretrial plea offer that would have enabled him to plead guilty to grand larceny for the theft of goods valued more than one thousand dollars but less than five thousand dollars; and more specifically, did Petitioner show *Strickland* prejudice (as articulated in *Frye*) resulting from trial counsel's failure to convey the plea offer?[14]

---

[14]    The reasons for granting a certificate of appealability are best summarized by referring to the arguments that Petitioner made in his petition for a writ of certiorari and petition for rehearing, which he filed with the South Carolina Supreme Court after the PCR court denied him relief. *See* ECF Nos. 46-3 & 46-6. Both petitions articulate Petitioner's position that he believed he committed the crime of grand larceny (and thus would have accepted a plea to such an offense) but did not believe he was guilty of burglary (and thus refused to plead to first or second-degree burglary). In his petition for a writ of certiorari, Petitioner argued:

> "[E]ven if the Petitioner maintained his innocence when initially presented with the offer of grand larceny, trial counsel could have discussed the option of pleading *nolo contendere* or pursuant to North Carolina v. Alford. Additionally, his attorney could have explained to him in detail the elements of grand larceny or accessory to grand larceny and she could have given him her opinion as to whether or not he should take the offer. There is simply no logical basis for the PCR court to

## Conclusion

The Court has reviewed the entire record, including the Magistrate Judge's R & R and Petitioner's objections, and the applicable law. The Court has conducted a de novo review of the portions of the R & R to which Petitioner specifically objects, and it finds no merit in his objections. For the reasons stated in the Court's order and the Magistrate Judge's R & R, the Court overrules Petitioner's objections [ECF No. 54] and adopts and incorporates by reference the R & R [ECF No. 52].

**IT IS THEREFORE ORDERED** that Respondent's motion for summary judgment [ECF No. 45] is **GRANTED** and that Petitioner's habeas petition [ECF No. 1] is **DISMISSED WITH PREJUDICE.**

**IT IS, HOWEVER, ORDERED** that a certificate of appealability is **GRANTED** as to the issue of whether trial counsel was ineffective for failing to notify Petitioner of the State's October 2006 pretrial plea offer that would have enabled him to plead guilty to grand larceny for the theft of goods valued more than one thousand dollars but less than five thousand dollars.

---

conclude, particularly in light of the fact that the Petitioner has admitted to actions that would constitute grand larceny, that the Petitioner would more likely than not . . . reject all offers and proceed to trial. At the very least the Petitioner would have been given the option between facing 15 years to life or pleading to a maximum of 5 years in prison. However, without having a discussion with his attorney concerning the offer and the repercussions of rejecting the offer it is simply impossible for a PCR court to determine that the Petitioner unequivocally would not have accepted a plea to grand larceny.

ECF No. 46-3 at 21.

In his petition for rehearing, Petitioner reiterated,

The PCR Court abused its discretion when finding as a fact that Petitioner would not have accepted an offer that he never received. Mr. Walker readily admitted to the elements of Grand Larceny at his PCR hearing. His attorney never explained the elements of Grand Larceny or the benefits of pleading guilty as the offer was never made to Mr. Walker. Options such as pleading nolo contendere or pleading pursuant to North Carolina v. Alford were never explained to him or negotiated by his attorney.

ECF No. 46-6 at 5.

**IT IS SO ORDERED.**

Florence, South Carolina                                s/ R. Bryan Harwell
January 5, 2016                                         R. Bryan Harwell
                                                       United States District Judge